**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE: MID-AIR COLLISION IN WASHINGTON, D.C., JAN 26, 2025** | * |
| | * |
| **ASHLEIGH STOVALL, as Personal Representative of the Estate of MICHAEL STOVALL, deceased, on behalf of the Estate of all Wrongful Death Beneficiaries** | *   Civil Action No. **1:25-cv-04490-ACR** |
| | * |
| **Plaintiff** | * |
| | * |
| **v.** | * |
| | * |
| **AMERICAN AIRLINES, INC., et al.** | * |
| | * |
| **Defendants** | * |

\*   \*   \*   \*   \*   \*   \*

### MOTION TO QUASH SUBPOENA FOR MENTAL HEALTH TREATMENT RECORDS, OR IN THE ALTERNATIVE, FOR ENTRY BY THE COURT OF A PROTECTIVE ORDER REGARDING SUBPOENAED MENTAL HEALTH TREATMENT RECORDS

Non-party Licensed Clinical Social Worker Ethel D. Sayles, by her undersigned counsel, files this Motion to Quash the Subpoena for Mental Health Treatment Records, or in the alternative, for entry by the Court of a Protective Order regarding the subpoenaed mental health records. The Motion to Quash, or in the Alternative Motion for Entry of a Protective Order should be granted for the following reasons.

## I.    INTRODUCTION

Licensed Clinical Social Worker Ethel D. Sayles, a non-party mental health professional, respectfully moves this Court pursuant to Federal Rules of Civil Procedure 45(d)(3) and 26(c) to quash a subpoena issued by Defendants American Airlines, Inc. and PSA Airlines, Inc. commanding production of confidential mental health treatment records, or in the alternative, for a protective order limiting the scope and conditions of any production.

On April 9, 2026, Defendants served a subpoena on Ms. Sayles commanding production of all medical, psychological, and therapy records concerning Ashleigh Stovall from January 29, 2020 to the present, with production required by April 30, 2026 at Holland & Knight LLP's offices in Washington, D.C. The subpoena seeks confidential mental health records created during a one-year course of teletherapy treatment that concluded in October 2024, more than three months before the American Airlines aircraft crash on January 29, 2025 that resulted in the death of Ms. Stovall's husband.

The subpoena should be quashed in its entirety because: (1) the requested records are protected by the psychotherapist-patient privilege recognized under federal common law and District of Columbia law; (2) the records are not relevant to any claim or defense in this wrongful death action; (3) the subpoena is not proportional to the needs of the case; (4) the subpoena imposes undue burden on a non-party; (5) the records constitute protected health information under the Health Insurance Portability and Accountability Act and cannot be disclosed without valid authorization or court order; and (6) the temporal remoteness of the therapy records defeats any argument that they are relevant to damages resulting from the crash. The subpoena was served without a HIPAA-compliant authorization from Ms. Stovall and without a court order authorizing disclosure. Defendants' cover letter indicates that a HIPAA release will be provided upon request, but this conditional promise does not cure the fundamental legal defect. The non-party therapist faces potential liability for HIPAA violations and breach of professional confidentiality obligations if compelled to produce these materials without proper authorization.

In the alternative, if the Court determines that any production is warranted, Ms. Sayles requests that the Court issue a protective order imposing strict conditions to protect Ms. Stovall's privacy and the integrity of the therapeutic relationship.

## II.    STATEMENT OF FACTS

### A.      The Parties and the Underlying Litigation

This action arises from a mid-air collision involving an American Airlines aircraft that occurred on January 29, 2025, in Washington, D.C. The collision resulted in the death of Ashleigh Stovall's husband, a passenger on the American Airlines flight. The Plaintiff, as personal representative of the decedent's estate, has brought a wrongful death action against Defendants American Airlines, Inc., PSA Airlines, Inc., and the United States of America. The case is pending in the United States District Court for the District of Columbia under Civil Action No. 1:25-cv-04490-ACR, with a related lead case numbered 1:25-cv-03382-ACR.

### B.      Ms. Sayles and Her Professional Practice

Ms. Ethel D. Sayles is a Licensed Clinical Social Worker who maintains a professional practice as an employee of DC Metro Therapy, doing business as DC Metro Sleep and Psychotherapy LLC. The registered agent for her practice is Incorp Services, Inc., located at 1519 York Road, Lutherville, Maryland 21093. Ms. Sayles is a mental health professional licensed to provide psychotherapy and counseling services in the State of Maryland.

### C.      Ms. Stovall's Therapy Treatment

Ashleigh Stovall is the surviving spouse of a passenger who was killed in the American Airlines crash on January 29, 2025. Ms. Stovall received teletherapy treatment from Ms. Sayles for one year. The therapy was conducted via video conference from Ms. Sayles' Maryland office. Ms. Stovall resided in Waldorf, Maryland during the course of her treatment. The therapy treatment concluded in October 2024, more than three months before the American Airlines aircraft crash that resulted in her husband's death on January 29, 2025.

### D.      The Subpoena

On April 9, 2026, Ms. Sayles received a subpoena to produce documents issued by Holland & Knight LLP on behalf of Defendants American Airlines, Inc. and PSA Airlines, Inc. The subpoena was issued pursuant to Federal Rule of Civil Procedure 45 and is directed to DC

Metro Therapy, c/o DC Metro Sleep and Psychotherapy LLC, c/o Registered Agent: Incorp Services, Inc., 1519 York Road, Lutherville, Maryland 21093.

The subpoena commands Ms. Sayles to produce Ms. Stovall's entire file from January 29, 2020 to the present, including but not limited to:

1. All medical and psychological records and reports, office records, notes, summaries, charts, consultation reports, test results, correspondence, patient history questionnaires, counseling records, hospital records, outpatient records, prescriptions, rehabilitation records, therapy records, and all other data pertaining to the diagnosis, treatment and care of Ms. Stovall;

2. All reports prepared by or on behalf of Ms. Sayles to any party, insurance company, or attorney concerning the diagnosis, care and treatment of Ms. Stovall;

3. All correspondence, including to and from attorneys, emails, faxes, telephone messages, identification cards, and any and all insurance claim forms;

4. All patient intake forms, online portal records, and questionnaires pertaining to Ms. Stovall;

5. Any and all medical bills and statements, itemized lists of medical charges, and all billing records;

6. All records of other health care providers contained in Ms. Sayles' file;

7. Every piece of paper in the patient's chart, including notations on the file jacket; and

8. All other documents kept by Ms. Sayles on Ms. Stovall which are not otherwise responsive to the foregoing categories.

The subpoena commands that these documents be produced at Holland & Knight LLP, 800 17th Street N.W., Suite 1100, Washington, D.C. 20006, on April 30, 2026 at 10:00 a.m. The subpoena includes a declaration for a records custodian to review for accuracy and to sign and notarize, which is to be produced together with the requested documents.

E.      **Absence of Patient Authorization and Court Order**

The subpoena does not include a valid authorization from Ashleigh Stovall authorizing disclosure of her confidential therapy records. The cover letter accompanying the subpoena notes that a HIPAA Release will be provided upon request, indicating that Defendants anticipated potential privacy concerns but did not obtain authorization from Ms. Stovall prior to serving the subpoena. To date, no HIPAA authorization from Ms. Stovall has been provided to Ms. Sayles. Additionally, no court order authorizing disclosure of Ms. Stovall's therapy records has been obtained.

## III.    SUMMARY OF ARGUMENT

The subpoena to non-party Licensed Clinical Social Worker Ethel D. Sayles should be quashed in its entirety. Ms. Stovall's confidential psychotherapy records are protected by the federal psychotherapist-patient privilege recognized in *Jaffee v. Redmond* and by District of Columbia statutory law. The privilege extends to confidential communications made to licensed social workers in the course of psychotherapy and protects therapy notes from compelled disclosure. No waiver of the privilege has occurred, and no exception applies.

Even if the records were not privileged, they are not relevant to any claim or defense in this wrongful death action. The therapy concluded in October 2024, more than three months before the January 29, 2025 crash. Pre-crash therapy records cannot establish causation between the crash and any mental health condition, and they have no bearing on the central issues of crash causation, airline negligence, or liability. The temporal remoteness of the records defeats any argument that they are relevant to damages.

The subpoena fails the proportionality requirements of Federal Rule of Civil Procedure 26(b)(1). The burden and expense of producing six years of confidential therapy records substantially outweigh any likely benefit to Defendants, who have access to other sources of information regarding damages. The subpoena's extraordinary breadth-demanding the entire file

and every piece of paper-demonstrates that it seeks a fishing expedition into Ms. Stovall's private mental health records rather than targeted discovery of relevant information.

The subpoena imposes undue burden on the non-party therapist in violation of Federal Rule of Civil Procedure 45(d)(1) and 45(d)(3)(A). Ms. Sayles must locate, review, organize, and produce voluminous sensitive materials while ensuring compliance with professional confidentiality obligations and HIPAA regulations. Defendants have not offered to reimburse costs or compensate for the substantial time and effort required.

Finally, the subpoena seeks protected health information under HIPAA without valid authorization from Ms. Stovall or a court order authorizing disclosure. Defendants' conditional promise to provide authorization upon request does not satisfy legal requirements and exposes Ms. Sayles to potential liability for unauthorized disclosure.

In the alternative, if the Court determines that any production is warranted, it should issue a protective order with strict conditions including in camera review, categorical exclusion of therapy communications, narrow temporal scope, limitation to administrative metadata only, attorneys' eyes only designation, prohibition on use outside litigation, filing under seal, return and destruction of materials, cost shifting, and patient notice with opportunity to object.

## IV.    ARGUMENT

### A.    THE SUBPOENA SEEKS MATERIALS PROTECTED BY THE PSYCHOTHERAPIST-PATIENT PRIVILEGE AND MUST BE QUASHED

#### i. The Federal Psychotherapist-Patient Privilege Protects Confidential Communications and Therapist Records

The federal psychotherapist-patient privilege provides robust protection for communications between patients and licensed mental health professionals. In Jaffee v. Redmond, the Supreme Court held that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Federal Rule of Evidence 501. *Jaffee v. Redmond*, 518 U.S. 1. The

Court extended this federal psychotherapist privilege to confidential communications made to licensed social workers in the course of psychotherapy. *In re Sealed Case (Medical Records)*, 381 F.3d 1205. Accordingly, conversations between a patient and a licensed social worker and the notes taken during their counseling sessions are protected from compelled disclosure.

The privilege is rooted in the imperative need for confidence and trust. *Jaffee v. Redmond*, 518 U.S. 1. Effective psychotherapy depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. *Jaffee v. Redmond*, 518 U.S. 1. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.

The Supreme Court squarely rejected the position that a court should balance the need for relevant information in the particular case before it against the invasion of a patient's privacy. *Koch v. Cox*, 489 F.3d 384. Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. *Koch v. Cox*, 489 F.3d 384.

### ii. District of Columbia and Maryland Law Provides Additional Protection for Mental Health Records

The District of Columbia provides statutory protections for mental health information and confidential communications with mental health professionals. Under D.C. Code § 14-307, mental health professionals, including licensed clinical social workers, are prohibited from disclosing confidential information acquired in attending a client in a professional capacity without the written consent of the client or the client's legal representative. D.C. Code § 14-307.

Additionally, no mental health professional, mental health facility, or employee or agent thereof shall disclose or permit the disclosure of mental health information to any person except as specifically authorized by statute. D.C. Code § 7-1201.02. Before a court may find that disclosure of confidential mental health information is required in the interest of justice, the court must serve the affected individual with notice of the potential disclosure and provide the individual with 14 days from the date of service to object to the disclosure. D.C. Code § 14-307. The District of Columbia Mental Health Information Act provides heightened protection for mental health professional personal notes. Under D.C. Code § 7-1201.03, if a mental health professional makes personal notes regarding a client, such personal notes shall not be maintained as a part of the client's record of mental health information, and access to such personal notes shall be strictly and absolutely limited to the mental health professional. D.C. Code § 7-1201.03. Personal notes are defined as mental health information disclosed to the mental health professional in confidence by other persons on condition that such information not be disclosed to the client or other persons, and the mental health professional's speculations. D.C. Code § 7-1201.01.

Md. Health-General Code Ann. § 4-307 provides that the mental health treatment records of a Licensed Clinical Social Worker are also deemed confidential and privileged from disclosure in Maryland.

### iii. The Subpoena Seeks Privileged Materials Without Waiver or Exception

The subpoena demands Ms. Stovall's entire file from January 29, 2020 to present, encompassing therapy and counseling records, intake forms, correspondence, billing information, and every piece of paper in the patient's chart. This extraordinarily broad demand seeks precisely the type of confidential communications and therapist notes that the psychotherapist-patient privilege protects.

Ms. Stovall's teletherapy with Ms. Sayles, which lasted one year and ended in October 2024, involved confidential communications made for the purpose of diagnosis and treatment. No evidence suggests that Ms. Stovall has waived the privilege, and no exception to the privilege applies. The subpoena does not include a HIPAA authorization or any other evidence of waiver. Ms. Stovall has not put her mental health at issue in this litigation-the wrongful death action concerns her husband's death in an aircraft crash, not her mental health condition.

### iv. Federal Rule of Civil Procedure 45 Requires Quashing Subpoenas Seeking Privileged Matter

Federal Rule of Civil Procedure 45 requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden. *Watts v. SEC*, 482 F.3d 501 The subpoena here seeks privileged matter-the confidential communications and therapist notes protected by the federal psychotherapist-patient privilege and the D.C. Mental Health Information Act. Accordingly, the subpoena must be quashed.

### B. THE SUBPOENA SEEKS INFORMATION THAT IS NOT RELEVANT TO ANY CLAIM OR DEFENSE AND MUST BE QUASHED

### i. Discovery Is Limited to Matters Relevant to Claims and Defenses

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. USCS Fed Rules Civ Proc R 26. A subpoena is limited in scope by Rule 26(b)(1). *Kotwicki v. Medstar-Georgetown Med. Ctr., Inc.*, 2021 D.C. Super. LEXIS 326 The broad presumption in favor of discovery is bounded by the limitations that arise when the inquiry touches upon the irrelevant.

### ii. Pre-Crash Therapy Records Are Not Relevant to Crash Causation, Negligence, or Liability

The subpoena seeks Ms. Stovall's entire psychotherapy file spanning from January 29, 2020 to present. However, Ms. Stovall's therapy with Ms. Sayles ended in October 2024-more than three months before her husband's death in the American Airlines crash on January 29, 2025.

Pre-crash mental health records have no logical connection to crash causation, airline negligence, or the airline's liability for the incident. The records cannot illuminate how the aircraft failed, what maintenance deficiencies existed, what pilot error occurred, or what regulatory violations the airline committed. They shed no light on the airline's conduct, the aircraft's condition, or the circumstances of the crash itself. Accordingly, these records are not relevant to any claim or defense regarding the airline's liability for the incident.

### iii.  Pre-Crash Records Cannot Establish Post-Crash Damages

Defendants may argue that pre-crash mental health records are relevant to establish a baseline for Ms. Stovall's emotional distress damages or to suggest alternative causation for any emotional injuries she claims. This argument fails for several reasons.

First, the temporal gap between the end of therapy in October 2024 and the crash in January 2025 is dispositive. The records do not capture Ms. Stovall's mental state at the time of the incident or in the immediate aftermath. They do not document her reaction to her husband's death or the development of any emotional injuries she claims to have suffered. If Defendants genuinely need to understand Ms. Stovall's mental health status for damages purposes, post-crash mental health records and evaluations would be far more probative.

Second, the subpoena is not narrowly tailored to any legitimate baseline inquiry. It demands the entire psychotherapy file, including all correspondence, intake forms, billing records, and records from other providers. This sweeping request goes far beyond what would be necessary to establish a baseline mental health status. A legitimate baseline inquiry could be addressed through targeted interrogatories, a focused deposition of Ms. Stovall, or a limited request for summary mental health information.

Third, the subpoena sweeps in highly sensitive communications unrelated to the incident. Psychotherapy records contain some of the most intimate and sensitive information a person can disclose. The breadth of the subpoena means it will capture communications about matters

entirely unrelated to the crash, Ms. Stovall's husband's death, or any legitimate aspect of her damages claim.

### iv. Alternative Sources Are Available and Less Intrusive

Even if pre-crash mental health records had some marginal relevance to damages, less intrusive alternatives exist. Ms. Stovall herself can testify regarding her mental health status before the crash. If Ms. Stovall has sought mental health treatment or evaluation after the crash, those post-crash records would be far more directly relevant to her damages claim. Defendants can retain a mental health expert to evaluate Ms. Stovall. These alternatives are less intrusive, more directly probative, and fully adequate to address any legitimate damages inquiry.

### C.    THE SUBPOENA FAILS THE PROPORTIONALITY REQUIREMENTS OF RULE 26(b)(1)

Even if the therapy records were arguably relevant to some peripheral issue, production would not be proportional to the needs of the case. Discovery must be proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  USCS Fed Rules Civ Proc R 26.

The central issues in the case are the causation of the plane crash, the negligence of the defendants in operating the aircraft, and the liability of the defendants for the passenger's death. The therapy records do not address these central issues. While damages are important, they are secondary to liability.

The defendants have substantial access to information regarding the plane crash, including aircraft maintenance records, flight data, communications between pilots and air traffic control, and expert analysis of the crash. The defendants do not have access to Ashleigh Stovall's therapy records except through discovery. However, the defendants have access to other

information regarding Ashleigh Stovall's damages, including her own testimony and post-crash medical records.

The defendants are major airlines with substantial litigation resources and budgets. The non-party therapist has limited resources and would incur substantial burden in producing the therapy records. The therapy records are of minimal importance in resolving the central issues in the case. The records are of questionable importance in resolving damages, as they predate the crash by more than three months and cannot establish causation between the crash and any mental health condition.

The burden on the non-party therapist in locating, reviewing, and producing six years of confidential therapy records is substantial. The therapist must locate all therapy records from the treatment period, review the records to ensure they are responsive to the subpoena, organize and label the records, prepare an affidavit authenticating the records, arrange for production, and ensure that all records are properly handled to protect the patient's privacy. The defendants have not offered to reimburse the therapist for the costs of compliance or to compensate for the time required. The likely benefit to the defendants is minimal. The burden substantially outweighs the likely benefit.

### D.    THE SUBPOENA IMPOSES UNDUE BURDEN ON THE NON-PARTY THERAPIST

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. *In re Beltway Law Grp., LLP*, 2017 Bankr. LEXIS 225 A court must quash or modify a subpoena that subjects a person to undue burden. *Watts v. SEC*, 482 F.3d 501. If a subpoena compels disclosure of information that is not properly discoverable, then the burden it imposes, however slight, is necessarily undue.

The subpoena demands Ms. Stovall's entire file spanning approximately six years, from January 29, 2020 to the present, encompassing psychotherapy notes, records, intake materials,

correspondence, billing documents, and every piece of paper in the file. This extraordinarily broad demand creates substantial compliance burdens for the non-party LCSW, including locating and retrieving multi-year records from storage systems, reviewing voluminous materials for responsiveness, conducting privilege and confidentiality screening, organizing and labeling documents for production, preparing a custodian declaration, arranging secure transmission of sensitive mental health information, and implementing safeguards against inadvertent disclosure. These tasks require specialized expertise and significant time investment from the LCSW and her staff, imposing costs that defendants have not offered to reimburse. The non-party LCSW faces substantial risk in producing these materials, including potential inadvertent disclosure of highly sensitive information and exposure to liability for breaches of confidentiality. These risks are heightened by the absence of any HIPAA authorization or court order governing the handling and use of the materials.

The burden and expense of compliance are substantial. The subpoena demands six years of records, including psychotherapy notes, intake materials, correspondence, and billing documents. Compliance requires the LCSW to invest significant time and resources in locating, reviewing, organizing, and securely transmitting sensitive materials. The absence of any offer to reimburse costs further exacerbates the burden.

### E.    THE SUBPOENA SEEKS PROTECTED HEALTH INFORMATION WITHOUT VALID AUTHORIZATION OR COURT ORDER

The therapy records constitute protected health information under HIPAA. The records contain individually identifiable health information regarding Ashleigh Stovall's mental health treatment.  42 USCS § 1320d. A subpoena alone does not constitute valid authorization under HIPAA. The subpoena was served without any HIPAA-compliant authorization from Ms. Stovall. Defendants' cover letter indicates that a HIPAA release will be provided upon request, but this conditional promise does not satisfy the legal requirement that authorization be obtained before disclosure is compelled.

A valid HIPAA authorization must be in writing and signed by the patient. The absence of such authorization at the time of service means that Ms. Sayles, as a healthcare provider, currently lacks legal authority to disclose the requested information. Compelling disclosure without authorization would expose Ms. Sayles to potential HIPAA violations and liability.  42 USCS § 1320d-6.

Under District of Columbia law, before a court may find that disclosure of confidential mental health information is required in the interest of justice, the court must serve the affected individual with notice of the potential disclosure and provide the individual with 14 days from the date of service to object to the disclosure.  D.C. Code § 14-307. In this case, no such notice has been provided to Ms. Stovall, and no opportunity to object has been afforded.

F.    **ALTERNATIVE RELIEF-PROTECTIVE ORDER WITH STRICT CONDITIONS**

In the alternative, if the Court determines that any production is warranted, Ms. Sayles respectfully requests that the Court issue a protective order under Federal Rule of Civil Procedure 26(c). The court, in its discretion, is authorized to fashion a set of limitations that allows as much relevant material to be discovered as possible, while preventing unnecessary intrusions into legitimate interests, including privacy and other confidentiality interests, that might be harmed by the release of the material sought.  *In re Sealed Case (Medical Records)*, 381 F.3d 1205.

Good cause exists to impose protective conditions on any production of Ms. Stovall's psychotherapy records. The records contain confidential communications between Ms. Stovall and a licensed clinical social worker made in the course of psychotherapy. The sensitive nature of psychotherapy communications creates substantial risk of embarrassment and harm to Ms. Stovall if disclosed without safeguards. The subpoena seeks the entire psychotherapy file from January 29, 2020 to present, a period spanning nearly five years. The temporal scope of the

subpoena is overbroad and encompasses records with no plausible connection to the events giving rise to this litigation.

If the Court determines that any portion of Ms. Stovall's psychotherapy records must be produced, the following protective conditions should be imposed:

1. In Camera Review by the Court: The Court should conduct an in camera review of all responsive materials before any production to Defendants to determine which, if any, portions of the psychotherapy file are relevant to the claims and defenses in this case and to exclude materials that are clearly privileged or unrelated to the litigation.

2. Categorical Exclusion of Psychotherapy Communications and Therapist Notes: All confidential communications between Ms. Stovall and the LCSW, including therapy session notes, clinical observations, treatment plans, and any personal notes maintained by the therapist, should be categorically excluded from production. D.C. Code § 7-1201.03.

3. Narrow Temporal Scope: Any production should be limited to records created during a narrow temporal window reasonably related to the events at issue, excluding all records predating a reasonable period before the crash.

4. Limitation to Administrative and Billing Metadata Only: If any production is ordered, it should be limited to administrative and billing information, such as dates of sessions, fees charged, and insurance billing codes, excluding the substance of therapy communications.

5. Attorneys' Eyes Only Designation: Any produced materials should be designated Attorneys' Eyes Only and should be accessible only to counsel for the parties, not to the parties themselves, their employees, or other non-attorney personnel.

6. Prohibition on Use Outside Litigation: Any produced materials should be subject to a strict prohibition on use outside this litigation and may not be disclosed to third parties, used in other proceedings, or retained after the conclusion of this litigation.

7. Filing Under Seal: All produced materials should be filed under seal and maintained in the Court's secure filing system, with public access strictly prohibited.

8. Return and Destruction of Materials: Upon conclusion of this litigation, including any appeals, all produced materials should be

returned to the LCSW or destroyed under the supervision of the Court.

9. Logging and Monitoring of Access: A detailed log should be maintained of all individuals who access the produced materials, the dates and times of access, and the purposes for which access was granted.

10. Cost Shifting and Reasonable Compensation: Defendants should be required to pay the reasonable costs of production, including the costs of reviewing materials for privilege and confidentiality, redacting sensitive information, and maintaining secure storage and access controls, and to compensate the LCSW for the time and expense involved in complying with the protective order.

11. Patient Notice and Opportunity to Object: Ms. Stovall should be provided with prompt notice of any order requiring production of her psychotherapy records and should be afforded a reasonable opportunity to object to the production or to seek further protective measures.

## V.     CONCLUSION

For the foregoing reasons, Ms. Ethel D. Sayles respectfully requests that this Court:

1.      GRANT this Motion to Quash the Subpoena in its entirety, and order that the subpoena issued to DC Metro Therapy, c/o DC Metro Sleep and Psychotherapy LLC, c/o Registered Agent: Incorp Services, Inc., 1519 York Road, Lutherville, Maryland 21093, be quashed and that no production of documents be required; or

2.      IN THE ALTERNATIVE, GRANT this Motion for Protective Order and issue a Protective Order under Federal Rule of Civil Procedure 26(c) that:

a. Requires in camera review by the Court of all responsive materials before any production to Defendants;

b. Categorically excludes all confidential communications between Ms. Stovall and the LCSW, including therapy session notes, clinical observations, treatment plans, and personal notes maintained by the therapist;

c. Limits production to records created during a narrow temporal window reasonably related to the events at issue;

d. Limits production to administrative and billing information only, excluding all substantive therapy communications and clinical materials;

e.  Designates any produced materials as Attorneys' Eyes Only, accessible only to counsel for the parties;

f.  Prohibits use of any produced materials outside this litigation;

g.  Requires that all produced materials be filed under seal;

h.  Requires that upon conclusion of this litigation, all produced materials be returned to the LCSW or destroyed;

i.  Requires maintenance of a detailed log of all individuals who access the produced materials;

j.  Requires Defendants to pay the reasonable costs of production and to compensate the LCSW for the time and expense involved in complying with the protective order; and

k.  Requires that Ms. Stovall be provided with prompt notice of any order requiring production and be afforded a reasonable opportunity to object.

3.        GRANT such other and further relief as the Court deems just and proper.


*/s/ William Carlos Parler, Jr.*
WILLIAM CARLOS PARLER, JR.
Bar No.: 389967
**THE LAW OFFICES OF**
**WILLIAM C. PARLER, JR., LLC**
311 Gailridge Road
Timonium, Maryland 21093
(410) 832-1885
w.parler@parlerlaw.com
*Attorneys for Ethel D. Sayles*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of April 2026, a copy of the aforegoing was served electronically through the Court's CM-ECF System to:

Douglas Alan Latto, Esq.
Speiser Krause PC
800 Westchester Avenue
Suite S-608
Rye Brook, NY 10573
dal@speiserkrause.com
*Counsel for Plaintiff*

Orla M. Brady, Esq.
DOJ-Civ
Aviation, Space & Admiralty
175 N Street NE
11th Floor
Washington, DC 20002
Orla.brady@usdoj.gov
*Counsel for Defendant,*
*United States of America*

Joshua R. Levenson, Esq.
William Gould, Esq.
Holland & Knight LLP
80017th Street N.W., Suite 1100
Washington, D.C. 20006
Joshua.levenson@hklaw.com
William.gould@hklaw.com
*Counsel for Defendants, American Airlines, Inc.*
*and PSA Airlines, Inc.*


                                        */s/ William C. Parler, Jr.*
                                        WILLIAM C. PARLER, JR.